UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JONATHAN G., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 22-107MSM |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of Social Security, | : | |
|     Defendant. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    Plaintiff Jonathan G., a "younger" individual with no significant work history, has a GED and some college (focused on computer programming), with activities including brief employment as a dishwasher and, as his attorney described it, the playing of video games streamed for an audience for *de minimis* compensation, although Plaintiff told his primary care physician that he "[h]as worked part-time doing computer programing." Tr. 40, 42-43, 227, 321, 579, 963, 2442; see Tr. 2409 (Plaintiff reports to provider that he has a "degree in computer programming."). Plaintiff has two children, but his access to them and his relationships with them and their mothers has been fraught with legal conflict, resulting in stress. See, e.g., Tr. 2101-02. On April 2, 2020, alleging mental (post-traumatic stress disorder ("PTSD"), bipolar disorder and depression) and physical (seizures, right shoulder (scapular dyskinesis) and arrhythmia) impairments, he applied for Supplemental Security Income ("SSI"). Tr. 245; ECF No. 11 at 3. This is not the first time Plaintiff has sought an award of disability benefits; the record reflects denials in 2019, 2018, 2015 and 2009. Tr. 125.

    After denials at the initial and reconsideration phases, an administrative law judge ("ALJ") relied on the record and the mild and moderate administrative findings of four state

agency ("SA") experts – two physicians (Drs. Leslie Abramson and Donn Quinn), a psychiatrist (Dr. Susan Killenberg) and a psychologist (Dr. Clifford Gordon) – to find that Plaintiff has significant mental limitations due to bipolar disorder, PTSD and generalized anxiety disorder, but that these do not preclude him from working. Tr. 19-26. The ALJ acknowledged that Plaintiff suffers from other impairments (neck and shoulder pain and a past history of epilepsy and syncope episodes), but that none of these was severe during the period in issue.[1] Tr. 19-20. The ALJ found the residual functional capacity ("RFC")[2] medical opinion (Tr. 2440-46) of Plaintiff's longtime primary care physician, Dr. Joanna Brown ("Dr. Brown"), to be unpersuasive.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application. ECF No. 11. Plaintiff contends that the ALJ erred (1) in finding Dr. Brown's opinion to be unpersuasive because he failed adequately to address its supportability, as well as because he relied on Dr. Brown's treating note that states, "[h]as worked part-time doing computer programing," Tr. 2442; (2) in failing to consider Dr. Brown's October 13, 2020, letter that opines that Plaintiff's shoulder makes him "unable to perform physical labor" and that "his other health conditions make it difficult for him to maintain a job on an ongoing basis," Tr. 2439; (3) in relying on the state agency experts because they did not see the medical and opinion evidence that was not provided until after their file review; and (4) in identifying Plaintiff's past relevant

---

[1] Because Plaintiff has applied only for SSI, the period in issue runs from the date of application to the date of the ALJ's decision. See ECF No. 11 at 10.

[2] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

work as "video game developer." ECF No. 11. The Commissioner counters with a motion to affirm. ECF No. 13.

The parties' motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000). Once the Court concludes that the decision is supported by substantial evidence and that the Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30. The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31. "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42

U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015.  If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits.  Sacilowski v. Saul, 959 F.3d 431, 440-41 (1st Cir. 2020); Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021), adopted by sealed order (D.R.I. Oct. 28, 2021).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 416.905.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905, 911.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920; Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003) (five step process applies to SSI claims).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 416.920(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id.

§ 416.920(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 416.920(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski, 959 F.3d at 434.

      B.     **Opinion Evidence**

The ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 416.920c.  The most important factors to be considered are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 416.920c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical findings is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 416.920c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859.  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

**IV.**     **Analysis and Recommendation**

### A. Dr. Brown's March 24, 2021, RFC Opinion

Plaintiff argues that he is disabled because the impairment of his right shoulder and neck, as reflected in the March 24, 2021, medical opinion of his primary care physician, Dr. Brown of WellOne, has significantly limited his use of his left arm and has rendered his right arm and hand virtually useless.[3] Plaintiff contends that the ALJ erred in finding this aspect of Dr. Brown's opinion unpersuasive because he failed to address its supportability based on the length of Plaintiff's treating relationship with Dr. Brown; because he erred in finding it inconsistent with and unsupported by the benign findings and recommendations of sporadic and conservative treatment in Dr. Brown's own treating note and other treating records; and because he relied on the inconsistency between Dr. Brown's opinion that Plaintiff cannot use his left hand or arm more than 25% of the time, and cannot use his right hand and arm at all, and Dr. Brown's contemporaneous note reflecting Plaintiff's representation that, "[h]as worked part-time doing computer programing." Tr. 2442; ECF No. 11 at 8-12.

I begin by focusing on Plaintiff's contention that the ALJ erred in failing to mention the length of Dr. Brown's treating relationship with Plaintiff and that this error requires remand. This argument fails because, as Plaintiff concedes, the applicable regulation – 20 C.F.R. § 416.920c – expressly provides that the ALJ must address only consistency and supportability. 20 C.F.R. § 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or

---

[3] Dr. Brown also opined that Plaintiff can barely walk, sit or stand ("less than two hours"), needs to shift positions at will and needs to take breaks every hour. Tr. 2440-41. The record is utterly devoid of clinical observations or even subjective complaints to support these opinions; they are completely inconsistent with the many observations of Plaintiff's normal gait, normal strength and normal musculoskeletal system. E.g., Tr. 1934, 1956-57, 2384-85. Plaintiff does not argue that the ALJ erred in finding this aspect of Dr. Brown's opinion unpersuasive. The inconsistency and unsupportability of these extreme opinions form an unchallenged part of the foundation for the ALJ's determination that Dr. Brown's March 24, 2021, opinion is unpersuasive. See Tr. 25.

decision."). How other factors were considered, including the length of the treating relationship, is not required to be explained. Id. § 416.920c(b)(2), (c)(3)(i) ("We may, but are not required to, explain how we considered" the "length of time a medical source has treated you"). Based on these applicable regulatory requirements, I find that this aspect of the ALJ's decision is untainted by error.

This argument would also fail on the merits. In his brief, Plaintiff asserts that Dr. Brown had treated him for nearly ten years and had a "well-developed and sustained treating relationship with" him, although Plaintiff concedes it was not continuous because Dr. Brown stopped seeing out-patients for some unidentified period of time. ECF No. 11 at 10-11. Dr. Brown herself noted only that Plaintiff had been "seen regularly for primary care since 2012." Tr. 2440. The prior ALJ decision from 2018 confirms such a longstanding treating relationship with WellOne providers other than Dr. Brown. Tr. 82-85. It makes no mention of Dr. Brown. Nor does the treating record presented to the Court contain evidence to confirm that Plaintiff regularly saw Dr. Brown herself (as opposed to other WellOne providers) over a ten-year period or at any time apart from three in-person encounters, two in 2019 and one in 2021, as well as two telephonic visits in 2020. Tr. 1944, 1954, 2349, 2354, 2442. Because the 2020 visits were both telephonic and the September 2019 visit did not involve an examination of Plaintiff's musculoskeletal system, the record reflects that Dr. Brown performed only two clinical examinations of Plaintiff's neck and shoulder. See Tr. 1944-47, 2349-51. The first, on July 8, 2019, is prior to the period in issue; the only one during the relevant period is the second, on March 24, 2021, the same day Dr. Brown signed her opinion. Thus, Plaintiff's factual foundation for this argument – that he had a "well-developed and sustained treating relationship" with Dr. Brown in relation to his shoulder/neck complaint – is utterly lacking in record support.

7

ECF No. 11 at 11. Put differently, even if the regulations did require that the nature of the pertinent treating relationship be articulated, the ALJ's decision would be compliant in that it appropriately explains how the ALJ considered the content of Dr. Brown's only relevant treating note in determining the supportability and consistency, and therefore the persuasiveness, of her opinion. Tr. 20, 25.

Plaintiff's second challenge to the ALJ's finding that Dr. Brown's opinion is unpersuasive is focused on the ALJ's finding that the Brown opinion is both inconsistent with and unsupported by "the longitudinal record including generally benign findings on physical examinations and his sporadic and conservative course of treatment." Tr. 20, 25; ECF No. 11 at 9-10. Relatedly, Plaintiff argues that the ALJ erred in focusing on Dr. Brown's own finding of Plaintiff's "[n]ormal overall musculoskeletal exam." Tr. 2445; ECF No. 11 at 9-10. Based on my own survey of the evidence of record, summarized below, I find that this argument is unavailing in that the ALJ's persuasiveness finding is amply supported by substantial evidence, as well as that the ALJ appropriately and accurately quoted from Dr. Brown's treating note.

At the only in-person 2019 appointment with Dr. Brown that focused on the shoulder, the clinical examination resulted in observations of normal range of motion, normal strength and no tenderness but that Plaintiff "holds slightly higher than L" with some localized pain. Tr. 1957. Based on this examination, Dr. Brown referred Plaintiff to the specialists at Ortho Rhode Island ("Ortho") where Plaintiff was seen by an orthopedist, Dr. Charlotte Moriarity. Tr. 1920-27. Ortho's records reflect that Plaintiff claimed loss of arm strength but providers noted that he was "still able to pick up heavy items." Tr. 1918. Based on her clinical examination, Dr. Moriarty ruled out Dr. Brown's concern of asymmetry, noting that the "shoulders are level." Tr. 1922. Overall, Dr. Moriarty opined that the shoulder "exam is fairly benign" and that "I do not see a

8

medical reason why [Plaintiff] cannot continue to work." Tr. 1922-23. At her last appointment with Plaintiff on March 9, 2020, Dr. Moriarty noted that, despite Plaintiff's complaints, physical therapy had been objectively successful in that Plaintiff improved in strength, stability and movement mechanics. Tr. 1926-27. She opined, "I do not think he has a problem with his shoulder at all," and advised that Plaintiff should not to go to the emergency room for shoulder pain. Tr. 1927.

Despite this orthopedic assessment, Plaintiff returned to WellOne still complaining of his shoulder. He was seen by another provider (not Dr. Brown), whose clinical examination was entirely normal; Plaintiff was told that his "shoulder work up does not warrant him to be out of work." Tr. 1931-34. Other clinical examinations of Plaintiff's shoulder are similarly benign. E.g., Tr. 899-900 (emergency department finds shoulder normal despite Plaintiff's claim that it dislocated; diagnosis is muscle strain with same day discharge and recommendation to use ice); Tr. 1754 ("unremarkable R[ight] shoulder examination"); Tr. 1804 ("able to range R[ight] shoulder without difficulty"); Tr. 1859 (on examination, normal strength in all extremities). Overall, these records amount to ample support for the ALJ's determination that Dr. Brown's opinion is inconsistent with and unsupported by "the longitudinal record," which reflects "generally benign findings on physical examinations." Tr. 20, 25.

As to treatment for the shoulder or neck, apart from the physical therapy that Dr. Moriarty noted had been successful in addressing the shoulder issue, and apart from non-narcotic medication and occasional prescriptions for muscle relaxants, e.g., Tr. 1986, 2350, the only other shoulder treatment of record are two isolated trigger point injections, one in June and one in December 2020, followed by the recommendation of no need to return for further injections except "when and if pain returns." Tr. 2382. I find that the ALJ's common sense labeling of

9

Plaintiff's shoulder treatment as "sporadic and conservative" is well supported by this evidence. See Crowley v. Saul, No. 19-cv-650-JL, 2020 WL 615094, at *8 (D.N.H. Feb. 10, 2020) (no error when ALJ labeled treatment with narcotic medication and injections for pain relief as conservative); Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655, at *2, 6 (D.R.I. Nov. 22, 2019), adopted by Text Order (D.R.I. Dec. 13, 2019) (no error for ALJ to adopt common sense finding that two isolated pain injections and physical therapy is "conservative treatment"); Garay v. Berryhill, Case No. 3:16-cv-30122-KAR, 2017 WL 4238861, at *10 (D. Mass. Sept. 25, 2017) ("[W]hen Plaintiff was evaluated . . . the plan was for conservative management, including physical therapy, pain medication, and possible epidural injections."). Therefore, I find no error in the ALJ's reliance on "sporadic and conservative course of treatment" as a further reason why Dr. Brown's opinion is unpersuasive. Tr. 20.

Nor did the ALJ err in his finding that Dr. Brown's own treating note from March 24, 2021, (an examination performed one day before the ALJ hearing) is inconsistent with and fails to afford support for the opinion she signed the same day.

According to Dr. Brown's treating note, Plaintiff complained of head pain, ongoing shoulder and right neck pain radiating through the body and told her that he needed "disability paperwork done." Tr. 2442. Yet on examination, Dr. Brown noted that Plaintiff's balance and gait were "intact" and that he had a "[n]ormal overall musculoskeletal exam." Tr. 2445. Regarding the right shoulder, Dr. Brown again noted that the shoulders appeared asymmetrical (in contrast to Dr. Moriarty's finding), as well as a reduction in right side strength and limited right side adduction; she questioned whether there might be "mild muscular atrophy." Tr. 2445. Otherwise, Dr. Brown observed normal bilateral range of motion and no tenderness on the left or right side. Id. For neck and shoulder treatment, Dr. Brown urged Plaintiff to procure a

previously ordered MRI, but otherwise made no recommendations and prescribed nothing. Id. These findings and recommendations clash with Dr. Brown's medical opinion to the extent that the opinion states that Plaintiff retains virtually no ability to lift, that he can use his left arm, hand and fingers no more than 25% of the time and that he can sit/stand/walk for less than two hours with breaks every hour for ten minutes. Id.; see Tr. 2440-41. Such extreme opinions are utterly unsupported in that neither Dr. Brown's March 24, 2021, examination nor any other examination reflects such observations. See 2442-46. As to the use of the right arm, hand and fingers, Dr. Brown's opinion that Plaintiff has "significant limitation – minimal," Tr. 2441, is inconsistent with and largely unsupported by Dr. Brown's examination of the right shoulder in that she observed no tenderness, with mostly (but not entirely) normal range of motion and possible "mild" muscle atrophy, including that her overall conclusion was that Plaintiff's "musculoskeletal exam" was normal. Tr. 2445.

  Finally, Plaintiff argues that the ALJ's decision is "patently incorrect" in quoting Dr. Brown's own notation in her March 24, 2021, treating note that Plaintiff had reported that he was "working part-time doing computer programming for gaming companies." Tr. 25. The ALJ appropriately deployed this notation as support for his RFC finding that Plaintiff retained "a greater ability to use his hands" than the extreme limitations that Dr. Brown incorporated in her opinion. Id. This notation was not used to undermine the ALJ's finding that Plaintiff had no substantial gainful activity during the period of alleged disability. Tr. 19. I discern no error in the ALJ's approach.

  At bottom, based on my review of the entirety of this extensive record, I find that the ALJ's finding that the Brown medical opinion signed on March 24, 2021, is unpersuasive is

11

consistent with applicable law and well supported by substantial evidence. Based on this finding, I do not recommend remand for further consideration of it.

### B. Dr. Brown's October 13, 2020, Letter

On October 13, 2020, Dr. Brown wrote a letter in which she opined that Plaintiff's shoulder makes him "unable to perform physical labor" and that "his other health conditions[4] make it difficult for him to maintain a job on an ongoing basis." Tr. 2439. Plaintiff contends that the ALJ's failure to analyze the persuasiveness of this letter is error requiring remand.

I disagree. While an ALJ must articulate the persuasiveness of "medical opinions" from a treating source like Dr. Brown, 20 C.F.R. § 416.920c(b), when a single source has provided multiple opinions, a single analysis is appropriate. Id. § 416.920c(b)(1). Therefore, the ALJ's detailed and appropriate analysis of the March 24, 2021, opinion is sufficient. Further, the October 13, 2020, letter does not qualify as a "medical opinion," which the applicable regulation defines as:

> [A] statement from a medical source about what <u>you can still do</u> despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities . . . to perform . . . sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions[;] . . . to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.

20 C.F.R. § 416.913(a)(2) (emphasis supplied). Dr. Brown's letter says only what Plaintiff cannot do – "physical labor" or a "job on an ongoing basis." It supplies no information regarding what Plaintiff "can do," which is essential for the letter to qualify as a medical opinion mandating a persuasiveness analysis. See Katherine P. v. Kijakazi, C.A. No. 21-427JJM, 2022 WL 3224851, at *5 (D.R.I. Aug. 10, 2022), adopted by Text Order (D.R.I. Aug. 10, 2022).

---

[4] Dr. Brown's letter does not specify what are the "other health conditions" to which she refers.

Finally, the regulations make clear that the ALJ is not required to comment on evidence that is "inherently neither valuable nor persuasive," which specifically includes treating source statements such as in the Brown letter that a claimant is not able to work or not able to perform continuing work. 20 C.F.R. § 416.920b(c)(3)(i). These are matters reserved for the Commissioner.

Because the applicable regulations did not and do not require the ALJ to analyze the persuasiveness of the Brown letter, I do not recommend remand based on his failure to do so.

### C.    Reliance on State Agency Experts Despite Post-File Review Evidence

Plaintiff contends that the ALJ erred in relying on the SA experts because they did not see post-file review evidence including records from the pain management clinic, Gateway and WellOne.[5] With no explanation how or why,[6] Plaintiff challenges the ALJ's finding that "evidence submitted subsequent to the [SA] review of the claim does not significantly differ from that which was reviewed by the Agency." Tr. 25. This argument is unavailing because these records do not reflect significant worsening of any impairment or other material symptoms or limitations of which the SA experts were unaware that would detract from the force of their

---

[5] Plaintiff also argues that the ALJ's reliance on the SA experts is error because they did not see Dr. Brown's October 13, 2019, letter or her March 24, 2021, medical opinion. This argument fails because neither an unpersuasive medical opinion (the March 24, 2021, opinion) nor a statement that is "inherently neither valuable nor persuasive" (the October 13, 2019, letter) constitutes evidence that "detract[s] from the weight that can be afforded the [SA experts'] opinions." Audrey P. v. Saul, C.A. No. 20-92MSM, 2021 WL 76751, at *9 (D.R.I. Jan. 8, 2021), adopted, 2021 WL 309233 (D.R.I. Jan. 29, 2021); see Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *5 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021) ("[O]nly if there are post-review indications of worsening that require medical interpretation does an adjudicator's reliance on the reviewer's opinions require remand.")

[6] Based on this deficiency, the Court could stop here because Plaintiff has waived the argument that the post-file review material requires remand for further consideration. See Soto-Cedeno v. Astrue, 380 F. App'x. 1, 4 (1st Cir. 2010) ("If there was error in how the ALJ proceeded, then, [plaintiff] has waived the defect."); David H. v. Kijakazi, C.A. No. 21-333WES, 2022 WL 2816775, at *4 n.5 (D.R.I. July 19, 2022), adopted by text order (D.R.I. Sept. 13, 2022) ("'[T]hrow-in arguments left for the Court to sort out on its own . . . are deemed waived.'") (quoting Melissa G. v. Kijakazi, C.A. No. 20-367-WES, 2021 WL 3124228, at *8 (D.R.I. July 23, 2021), adopted by Text Order (D.R.I. Aug. 18, 2021)) (alteration in original).

findings. Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018); see Andrea T. v. Saul, C.A. No. 19-505WES, 2020 WL 2115898, at *5 (D.R.I. May 4, 2020), adopted by text order, (D.R.I. June 5, 2020) (listing cases).

Regarding the pain management records, the SA experts were aware of Dr. Moriarty's treating opinion that Plaintiff's shoulder pain was not severe enough to prevent him from working, at the same time that she acknowledged that his perception of pain was real and referred him to the pain management clinic. What the SA experts did not see was that this referral resulted in Plaintiff being seen at the pain management clinic in June and December 2020. However, these records are consistent with the Moriarty opinion in that the only shoulder examination performed (at the June appointment) was largely benign ("good range of motion") except for "areas of tenderness" and a positive shoulder facet loading test. Tr. 2385. Further, after the first injection, providers suggested that he return in one month for a follow up appointment, Tr. 2383, but Plaintiff did not return for six months. Tr. 2382. There is no indication that an examination was performed at the December appointment; further, no more appointments or injections were scheduled. Id. Instead, Plaintiff was told that he could return "when and if the pain returns." Id. I find that these records are consistent with what the SA experts reviewed and simply do not rise to the level required for a Virgen remand.

The remaining post-file review materials are also non-starters. The first Gateway record (Tr. 2391-98) to which Plaintiff points is a duplicate of a record that the ALJ did see (Tr. 2260-67), while the other Gateway record (Tr. 2409-12) is consistent with, or more benign than, the pre-file review Gateway materials that the SA experts did see in that it reflects a telephonic appointment with no mental status examination, as well as that Plaintiff was taking no current medications, yet was "doing ok," presenting as "upbeat and pleasant," reporting only situational

anxiety and depression.  Compare Tr. 2408-10, with, e.g., Tr. 2092-93 (SA experts saw this Gateway record, which reflects no medication but increased situational stress and worried and frustrated mood).  Similarly, the post-file review WellOne records echo, or are more benign than, what is in the pre-file review records in that they principally reflect the ongoing refusal of WellOne providers (except Dr. Brown) to provide Plaintiff with an opinion that he cannot work despite his complaints of shoulder and neck pain.  Compare Tr. 2421-22, 2425, with, e.g., Tr. 1954-57 (SA experts saw this WellOne record of Dr. Brown appointment at which Plaintiff complained of shoulder pain, imaging was ordered and temporary out-of-work note supplied).

Based on the foregoing, I find no error in the ALJ's reliance on the SA experts.

**D.     ALJ's Reliance on Plaintiff's Work as "Video Game Developer"**

Plaintiff argues that the ALJ made a "patent error" in referring to Plaintiff's own statements to providers reflecting engagement in video game development.  ECF No. 11 at 9.  The challenged references are based on two treating source notations.

First, the ALJ quoted from Dr. Brown's March 24, 2021, treating note, which states, as pertinent to Plaintiff's neck and shoulder pain, "[h]as worked part-time doing computer programming for gaming companies."  Tr. 20, 25 (quoting Tr. 2442).  Dr. Brown's note echoes similar statements by Plaintiff in support of his application and to treating providers.  E.g., Tr. 40 ("I was developing employment of just in streaming content for video surveillance.  It wasn't very lucrative or anything"); 963 (Plaintiff reports two years of college in computer programming); Tr. 2102 (Plaintiff tells Gateway that he earned "degree in computer programming" but is unemployed due to seizures).  The ALJ use of Dr. Brown's entry is strictly limited – he found that this activity (computer programming) requiring the use of fingers, hands and arms, as reported by Plaintiff to Dr. Brown, is inconsistent with Dr. Brown's medical

15

opinion that Plaintiff's left arm/hand is usable only between 5% and 25% of the time, while his right arm/hand is minimally useful. The ALJ did not find that this statement to Dr. Brown was evidence of actual work or substantial gainful employment.

Second, the ALJ accurately referenced a statement that a Gateway mental health provider found pertinent and included in a 2021 record: "[h]e did receive an email from a company which has given him credentials to 'develop for studio' where he can work on developing video games." Tr. 2339. The ALJ's decision includes this statement for the limited purpose of illustrating his analysis of Plaintiff's mental health capacity to support the finding that Plaintiff's mental symptoms improved with medication. Tr. 24. The ALJ's decision does not treat Plaintiff's statement to Gateway as evidence of work actually performed for compensation.

Plaintiff argues that the ALJ's incorporation of these statements in his decision is erroneous and "reflects misinterpretation of the highest level of work functioning that [Plaintiff] obtained in the past." ECF No. 11 at 13. This argument fails because the ALJ did not find that video game development ever rose to the level of "work functioning" or was or even approached a substantial gainful activity. Rather, in his prior work finding, the ALJ makes clear that Plaintiff has no prior work and that video game development was merely an activity that "claimant endorsed," not one that the ALJ actually found as constituting real work. Tr. 19. I find no error and do not recommend remand on this basis.

## V.     Conclusion

Having reviewed the entirety of this massive record, I find that the ALJ's findings are consistent with applicable law and sufficiently supported by substantial evidence. Accordingly, I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the

Commissioner of Social Security (ECF No. 11) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 12, 2022